Sixth Division
March 21, 2008

No. 1-05-3880

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | |
| | ) | 04 CR 25950 |
| DUOC BUI, | ) | |
| | ) | |
| Defendant-Appellant. | ) | Honorable |
| | ) | Marjorie Laws, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Following a jury trial, defendant, Duoc Bui, was found guilty of two counts of possession of a controlled substance with intent to deliver and sentenced to concurrent terms of 15 years' imprisonment. On appeal, defendant contends that: (1) the search warrant was unconstitutional; (2) police exceeded the scope of the warrant; (3) the State failed to prove him guilty beyond a reasonable doubt; (4) he was denied a fair trial by the improper admission of evidence; (5) the trial court abused its discretion by refusing to tender an Illinois Pattern Jury Instruction; and (6) one of his convictions must be vacated because it violates the one-act, one-crime rule. For the reasons that follow, we affirm.

On September 30, 2004, defendant was arrested and charged by indictment with one count of possession of 1,500 or more tablets of methylenedioxymethamphetamine (MDMA) with intent to deliver (720 ILCS 570/401(a)(7.5)(D) (West 2004)), possession of 900 or more grams of methamphetamine with intent to deliver (720 ILCS 570/401(a)(6.5)(D) (West 2004)), and possession of 15 or more grams but less than 100 grams of cocaine with intent to deliver (720

1-05-3880

ILCS 570/401(a)(2)(A) (West 2004)). Prior to trial, defendant filed a motion to suppress evidence, alleging that police did not "knock and announce" their office before entering his home and executing a search warrant. Defendant's motion was denied.

The following evidence was presented at defendant's trial.

On September 29, 2004, Chicago police officer Judith Solava, a member of the police department's narcotics division and package interdiction team, discovered a suspicious package while she was inspecting packages at a United Parcel Service (UPS) location in Chicago, Illinois. The package consisted of a brown box with "heavy" duct tape over all of the seams, and it was addressed to defendant at 11213 South Michigan Avenue, Chicago, Illinois, 60628. The return address label indicated that the package was from "John Tang" in California and listed a corresponding phone number. Officer Solava learned that there was no person by the name of "John Tang" listed at that return address or telephone number. According to Officer Solava, she suspected the package contained narcotics because of this "false sender" information, because the package was sent from a "border state," and because the seams of the package were covered entirely with tape. Officer Solava arranged the package among several others that she did not suspect contained narcotics and then called for the packages to be inspected by a canine handler.

Officer Steve Martinez, a canine handler, responded to Officer Solava's call. He gave his dog the command, "fetch dope," and then led the dog past all of the packages. When the dog came to the parcel addressed to defendant, it became agitated, excited, and started to bite and scratch at the parcel. The dog's behavior indicated that the package contained narcotics.

Officer Solava contacted another member of the postal interdiction team, Officer Carl

2

Bator, and informed him of the events surrounding the package. Officer Bator went to the address listed on the package and discovered that it belonged to a "Super Nails" salon. He relayed this information to Officer Solava.

Officer Solova then obtained a search warrant to open the package and inspect its contents. The package contained a large dietary supplement container. The container did not appear to be factory sealed, but instead was sealed with what appeared to be the same silver tape that was used on the outside of the parcel. Inside the container and buried with the supplement powder, officers found five plastic bags containing pink tablets. A field test performed on one of the tablets tested positive for MDMA, or "ecstacy."

Officers then arranged to make a "controlled delivery" of the package. Officer Bator obtained a "delivery" search warrant which authorized police to search "Duoc Bui or anyone taking control of the UPS Parcel *** and the location of 11213 S. Michigan Avenue *** and/or any other location that the parcel is accepted into the State of Illinois." The warrant further indicated that the parcel would be delivered by a member of the interdiction team posing as a private parcel courier and that the search warrant would only be executed if the parcel was accepted. Finally, Officer Bator obtained permission to place an electronic signaling device inside the package. Testimony at trial established that the officers executing the warrant each had a monitor for the signaling device, which would produce various signals indicating when the package was stationary, when it was being moved, and when it had been opened.

In the complaint for the search warrant, Officer Bator reiterated the circumstances under which the package was discovered and set forth the manner in which the controlled delivery

would be made. According to Officer Bator, a nail salon was located at the delivery address listed on the package, and no one with defendant's name resided at that address or used that addresse as his or her residential address for an Illinois state driver's license. Officer Bator further stated that he had over 18 years of experience as a police officer and had participated in "hundreds" of postal interdiction search warrants. That experience had demonstrated to Officer Bator that, although the delivery name and address were stated on the package, narcotics traffickers could move the parcel to another location or intercept it from the courier on the street and place it into a location other than that listed on the address label. Accordingly, Officer Bator requested that the warrant allow police to search any location where the package was accepted.

After obtaining the warrant, officers placed the narcotics back into the supplement bottle, which was then resealed, and placed the monitoring device inside the package and resealed it to resemble the original packaging. On September 30, 2004, at approximately 3 p.m., Officer Bator, dressed as a UPS courier, delivered the package to a woman inside the nail salon. The woman signed for the package and Officer Bator placed it on the counter. In the meantime, the other undercover officerss were in unmarked squad cars in the vicinity of the salon.

The officers then waited for approximately four hours but detected no movement of the package through the signaling device.[1] At about 7 p.m., a vehicle arrived and parked across the street from the salon. A man, later identified as defendant, exited the vehicle and entered the salon. Approximately five minutes later, the signaling devices indicated that the package was

---

[1]According to Officer Solava, police did not execute the warrant and search the salon during this time because the package showed no movement and had not been opened. Officer Solova testified that had the package been opened, police would have executed the warrant.

being moved and officers observed defendant exit the salon and return to his vehicle carrying the unopened package. Defendant placed the package in the backseat of his vehicle and drove away. Officers followed defendant as he drove to the area of 5100 North Broadway Street in Chicago, where he picked up a female passenger. Defendant then drove to a house located at 6546 North Campbell Street, where he exited the vehicle, retrieved the package from the rear seat, and entered the house. The female passenger entered the front seat of the vehicle and drove away. Approximately five minutes later, the officers were alerted through the tracking devices that the package had been opened. Several minutes later, officers were in position to execute the search warrant.

Officer Solava positioned herself in the gangway to ensure that no one exited the building while other officers entered the front door. Officers Bator and two other officers positioned themselves at the front door. Officer Bator knocked on the door approximately six times, each time announcing "search warrant, police, search warrant." Approximately 30 seconds later, when the knocks went unanswered, the officers broke down the door and entered the house. Officer Bator was the first to enter and he proceeded immediately down the stairs to the basement because he heard noises coming from that area. When he reached the basement, he saw four people and yelled, "[W]here is the guy with the box?" Officer Bator then observed defendant exiting a bedroom. He ordered defendant to the floor and another officer placed him in handcuffs.

Officer Bator entered the bedroom that defendant had just left and saw the UPS package lying open on the floor. The supplement bottle was opened and outside of the package, and Officer Bator could see the pink pills inside the bottle. He also observed an open suitcase on the

5

floor, in which there was a safe that was ajar and a black bag. Inside the safe were a number of small plastic bags containing white powder. The black bag contained a digital gram scale and a number of small plastic zip-lock bags.[2]

During this time, Officer Solava had found a women in an upstairs bedroom and brought her to the basement. When she entered the basement, four people were sitting on a sofa in a recreation area and defendant was handcuffed and being helped off of the floor by an officer. Officer Solava advised defendant of his *Miranda* rights, which defendant indicated that he understood.

Officer Bator then asked defendant if the room he had just exited was his bedroom. Defendant "nodded" toward that room and said, "there." The officers reentered the bedroom and conducted a more detailed search. Over defense counsel's objection, Officer Bator testified that during that search he found a box of bullets and a magazine clip inside the ceiling panels of defendant's bedroom.[3] Officer Solava then entered the bedroom to inventory the evidence that had been found. She made essentially the same observations as to the items in the bedroom as had been made by Officer Bator, and added that the supplement bottle had been opened and that its contents were "spilled out on the floor." Police inventoried the narcotics and paraphernalia as well as $103 that was found on defendant. Officer Bator estimated that the street value of the pink pills was $125,000.

---

[2]Officer Solava testified that, based upon her experience, items such as the scale and bags were used to package narcotics.

[3]Officer Solava, who was called as a witness prior to Officer Bator, had previously testified to the discovery of the bullets and magazine clip without objection from defendant.

The parties entered into a stipulation regarding the chemical composition of the pink tablets contained in the bottle of dietary supplement. They stipulated that Penny Evans, a forensic chemist with the Illinois State Police crime lab, would testify that she received and tested 4,997 pink tablets. The tablets tested positive for the presence of MDMA and weighed 1143.7 grams. Evans would further testify that the contents of the 4,997 tablets tested positive for the presence of methamphetamine. Finally, Evans would testify that she received 17 plastic bags containing a white, chunky substance and that the substance tested positive for the presence of cocaine and weighed 20 grams.

Defendant called Michael Pham to testify on his behalf. Pham testified that on September 30, 2004, he lived in the seven-bedroom house on Campbell Street with his parents, brothers and sisters, and defendant. The family and defendant had lived in the house for about one week prior to September 30, 2004. Defendant lived in one of the three bedrooms located in the basement. One of Pham's brothers and sisters lived in each of the other two downstairs bedrooms. Defendant was not related to the family, but he worked in the nail salon that was owned by Pham's parents.

Pham was alone in his upstairs bedroom on the day in question when he heard the doorbell ring. He opened the door and saw defendant holding the UPS package. Defendant entered the house and went "straight to the basement," and Pham returned to his bedroom. Approximately five minutes later, Pham heard a loud bang and within seconds police entered his bedroom and directed him to the basement.

The jury found defendant guilty of possession of methylenedioxymethamphetamine with

7

intent to deliver and possession of methamphetamine with intent to deliver, but not guilty of possession of cocaine with intent to deliver. The trial court sentenced defendant to concurrent terms of 15 years' imprisonment. This appeal followed.

Defendant first contends that the warrant employed by the police in this case was unconstitutional. The fourth amendment of the United States Constitution provides, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend IV. Likewise, section 6 of article I of the Illinois Constitution states, "No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, §6. See also 725 ILCS 5/108-7 (West 2004) (requiring the place or person to be searched and the items to be seized to be "particularly described in the warrant").[4]

Defendant challenges the constitutionality of the warrant on essentially two bases. First, he contends that the warrant failed to describe the places to be searched with particularity. Second, he contends that the warrant was not supported by probable cause. Before considering these arguments, we address the State's contention that defendant has waived his challenges to the constitutionality of the warrant.

The record shows that defendant filed a motion to suppress but failed to assert in that

---

[4]Defendant makes an initial reference in the argument section of his brief to the text of section 6 of article I of the Illinois Constitution, but all of his claims are brought solely under the fourth amendment to the United States Constitution. Accordingly, we review defendant's constitutional challenges to the warrant solely under the fourth amendment.

motion the arguments he is now raising on appeal. Defendant also failed to object at trial to the admission of the evidence obtained pursuant to the warrant. Finally, defendant did not challenge the constitutionality of the warrant in a posttrial motion. Generally, a reviewing court will not consider a claim of an illegal search and seizure unless it was first presented to the trial court. *People v. Johnson*, 38 Ill. 2d 399, 402 (1967); *People v. Gornik*, 227 Ill. App. 3d 272, 279 (1992). Moreover, in order to preserve an issue for appeal, defendant must raise an objection at trial and include the objection in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Accordingly, defendant's contentions regarding the constitutionality of the warrant are waived. See *People v. McCarty*, 223 Ill. 2d 109, 141-42 (2006) (finding that defendant's arguments regarding the constitutionality of a warrant were forfeited because they were not raised at trial or in a posttrial motion).

In his reply brief, defendant claims that this issue was properly preserved because he challenged the seizure of the narcotics in a motion to suppress and in a motion for a new trial. However, these motions only asserted claims that the police failed to "knock and announce" their office prior to conducting a search of his home and they did not include the claims that defendant now seeks to raise regarding the warrant. Therefore, contrary to defendant's argument, these claims have not been properly preserved. See *McCarty*, 223 Ill. 2d at 142.

Defendant further claims that if the error was not properly preserved, we should consider the issue under the plain error rule. Under that rule, issues not properly preserved may be considered by a reviewing court under two limited circumstances: (1) where the evidence is closely balanced, so as to preclude argument that an innocent person was wrongfully convicted;

or (2) where the alleged error is so substantial that if affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process. *People v. Hall*, 194 Ill. 2d 305, 335 (2000). However, before invoking the plain error exception, " 'it is appropriate to consider whether error occurred at all,' because without error, there can be no plain error." *People v. Smith*, 372 Ill. App. 3d 179, 181 (2007), quoting *People v. Wade*, 131 Ill. 2d 370, 376 (1989).

Defendant contends that the warrant was unconstitutional because it was not supported by probable cause and because it failed to describe the places to be searched with particularity. Alternatively, defendant argues that even if the warrant was facially valid, the police acted outside its scope by searching his home.

Defendant's claims appear to raise issues of first impression, as we have not found, nor have the parties presented us with, any Illinois case law considering these claims raised in the context of the specific warrant employed by the police in this case. In order to properly evaluate defendant's claims, it is necessary to explain the type of warrant that was used by the police as well as the reasons why similar warrants have been found to be constitutional and the policy considerations that support their use by the police.

The warrant at issue in this case is an "anticipatory warrant." "An anticipatory search warrant is a warrant based upon an affidavit showing probable cause that at a future time certain evidence of a crime will be located at a specified place." *People v. Carlson*, 185 Ill. 2d 546, 549 (1999); 2 W. LaFave, Search & Seizure §3.7(c), at 398 (4th ed. 2004). The execution of an anticipatory warrant is usually subject to a condition precedent other than the mere passage of

time - known as a "triggering condition." *United States v. Grubbs*, 547 U.S. 90, 94, 164 L. Ed. 2d 195, 201, 126 S. Ct. 1494, 1497 (2006). Anticipatory warrants are commonly sought when police or postal authorities intercept a package from the mail that contains narcotics. The police then seek a search warrant that is to be executed when the intercepted package has been delivered. The delivery of the package to the address listed is the "triggering condition" upon which the warrant is executed. See 2 W. LaFave, Search & Seizure §3.7(c), at 399 (4th ed. 2004).

Our supreme court has held that anticipatory warrants do not violate either the fourth amendment to the United States Constitution or the search and seizure clause of the Illinois Constitution. See *Carlson*, 185 Ill. 2d at 555. The supreme court's holding in *Carlson* was based on a recognition that searches conducted pursuant to a properly issued anticipatory warrant are both reasonable and based upon probable cause. Regarding the reasonableness of an anticipatory warrant when police know that a package containing narcotics will be delivered to a certain place at a certain time, the court noted that the options available to the police other than the use of an anticipatory warrant had significant disadvantages:

> "For instance, the police could apply for a search warrant after the
> package is delivered, or simply conduct no search at all. Both of
> these options present the possibility that law enforcement
> authorities will lose track of both the criminal and the contraband.
> [Citation.] In addition, in some cases, the exigent circumstances
> exception to the warrant requirement may allow the police to

11

1-05-3880

> conduct a lawful search without a warrant. [Citation.] A search
>
> pursuant to an anticipatory search warrant, however, is more
>
> reasonable than proceeding under the exigent circumstances
>
> exception because a neutral judge, rather than a police officer
>
> acting in the heat of the moment, makes the critical determination
>
> of whether probable cause for a search exists." *Carlson*, 185 Ill. 2d
>
> at 553-54.

In finding that a properly issued anticipatory warrant satisfies the fourth amendment's probable
cause requirement, the court noted:

> "The fact that the contraband is not presently at the residence
>
> described in the warrant at the time the warrant is issued is
>
> inconsequential. [Citation.] The requirement that certain events
>
> must take place before the execution of an anticipatory warrant
>
> assures that a search will take place only when justified by probable
>
> cause. [Citation.] Indeed, the information necessary to support
>
> issuance of an anticipatory warrant, *i.e.*, information regarding the
>
> known future location of the items to be seized, is more likely to
>
> establish that probable cause will exist at the time of the search than
>
> the information necessary to support issuance of a typical search
>
> warrant, *i.e.*, information regarding the known prior location of the
>
> items to be seized." (Emphasis omitted.) *Carlson*, 185 Ill. 2d at

1-05-3880

> 554, citing 2 W. LaFave, Search & Seizure §3.7(c), at 366 (3d ed.
> 1996).

See also *People v. Martini*, 265 Ill. App. 3d 698, 703 (1994) ("The use of [an anticipatory] warrant serves the purpose of assuming that the fourth amendment right to freedom from unwarranted searches and seizures is served by allowing the police to obtain a warrant in *advance* of a delivery rather than relying on the exigent circumstances exception to the warrant requirement (emphasis in original)).

Recently, the Supreme Court similarly held that anticipatory warrants are not categorically unconstitutional. See *Grubbs*, 547 U.S. at 94-97, 164 L. Ed. 2d at 202-04, 126 S. Ct. at 1498-1500. In so holding, the Court found that anticipatory warrants do not contravene the fourth amendment's requirement that warrants must be supported by probable cause. *Grubbs*, 547 U.S. at 95-97, 164 L. Ed. 2d at 203-04, 126 S. Ct. at 1499-1500. The Court also held that the fourth amendment did not require the triggering condition for an anticipatory search warrant be set forth in the warrant itself. *Grubbs*, 547 U.S. at 97-99, 164 L. Ed. 2d at 204-05, 126 S. Ct. at 1500-01.

Indeed, courts from other jurisdictions have discussed the strong public policy reasons favoring anticipatory warrants in finding that such warrants do not run afoul of the fourth amendment. For example, in *United States v. Garcia*, 882 F.2d 699, 703 (2d Cir. 1989), a case in which the Second Circuit held that anticipatory warrants were not unconstitutional *per se,* the court explained that, under the proper circumstances, such warrants can be effective in fighting criminal activity while simultaneously protecting individual fourth amendment rights. The court explained:

13

"Courts \*\*\* have upheld the anticipatory warrant, in large part, because they see it as desirable, whenever possible, for police to obtain judicial approval before searching private premises. Indeed, the fourth amendment mandates that, with few exceptions, a warrant be obtained before any search of a dwelling occurs. [Citation.]

Yet, one of the major practical difficulties that confronts law enforcement officials is the time required to obtain a warrant. In many instances, the speed with which government agents are required to act, 'especially when dealing with the furtive and transitory activities of persons who traffic in narcotics', W. LaFave, Search and Seizure 700 (1978), demands that they proceed without a warrant or risk losing both criminal and contraband. \*\*\* [Citation.]

The question thus posed by this case-and by any challenge to a warrant that is issued in anticipation of delivery of an item upon which the government relies to establish probable cause to search-is whether the objective of the fourth amendment is better served by allowing an agent to obtain a warrant in advance of the delivery, or whether it is better served by forcing him to go to the scene without a warrant, and, if necessary, proceed under the

> constraints of the 'exigent circumstances' exception, subject always to the risk of 'being second-guessed' by judicial authorities at a later date as to whether the known facts legally justified the search. [Citation.]

> Based on these considerations, we believe that the purposes of the fourth amendment are best served by permitting government agents to obtain warrants in advance if they can show probable cause to believe that the contraband will be located on the premises at the time that [the] search takes place. *Garcia*, 882 F.2d at 703.

The anticipatory warrant at issue in this case, however, is slightly different than the warrants considered in *Carlson* and *Grubbs*. In both of those cases, the package intercepted by police was to be delivered to the defendant's residence, and police obtained an anticipatory warrant to search that residence after a controlled delivery of the package was made. See *Carlson*, 185 Ill. 2d at 548; *Grubbs*, 547 U.S. at 92, 164 L. Ed. 2d at 201, 126 S. Ct. at 1497. In this case, however, the warrant was addressed to defendant at his place of employment, a nail salon, and police obtained a warrant giving them authority to search the salon "and/or any other location that the parcel is accepted into the State of Illinois." The clause of the warrant granting authority to search "any other location" was based on Officer Bator's sworn statements in the complaint for the search warrant that narcotics traffickers could move the package to another location or intercept the package on the street and place it in another location. It is this clause of the warrant, and the fact that the warrant was ultimately executed at defendant's residence, that

15

forms the basis of defendant's challenges to the warrant on appeal.

Prior to considering those challenges, we must first address a fundamental disagreement between the parties as to the meaning of the word "accepted" in the warrant. The State argues that "acceptance," in context of its use in the warrant, means to receive and open the package. Defendant, on the other hand, defines "acceptance" as "to receive" or "to take in" (Webster's Third New International Dictionary (1986)), and essentially argues that the package need not have been opened for it to have been accepted.

Defendant's interpretation of acceptance is overly technical and is not consistent with the intent behind the warrant when considered in context of the facts and circumstances of this case. See *People v. Sutherland*, 223 Ill. 2d 187, 219 (2006) (noting that warrants and their supporting documents are not to be read in a hypertechnical manner but, rather, in a commonsense fashion). We agree with the State that, as the term was used in the warrant, "accepted" means to receive and open the package. Black's Law Dictionary defines "accept" as "[t]o receive with approval or satisfaction; to receive with intent to retain," and further states that "to accept" "[m]eans something more than to receive, meaning to adopt, to agree to carry out provisions, to keep and retain." Black's Law Dictionary 12 (6th ed. 1990). "Acceptance" is similarly defined as "[t]he act of a person to whom a thing is offered or tendered by another, whereby he receives the thing with the intention of retaining it, such intention being evidenced by a sufficient act." Black's Law Dictionary 12 (6th ed. 1990).

We believe that these definitions are more in keeping with the spirit and intent of the warrant. Officer Bator's statement that the package could be moved to another location and his

request that the warrant allow police to search any other location where the package was accepted contemplates that the package could be opened at a location other than the salon and demonstrates that police intended to execute the warrant only when the package was opened. Officer Solava testified consistently with this understanding of the term when she stated that the police did not execute the warrant at the salon because the package had not been opened there and that, if it had been, police would have then executed the warrant. The use of the monitoring devices also demonstrates that "acceptance" meant to receive and open the package. Were this not the case, we fail to see why police would seek to place a monitoring device inside the package alerting them when it had been moved or, more importantly, when it had been opened. Moreover, to define accept as merely to receive would have given police authority to search the woman at the salon or anyone else who signed for the package. Considering the warrant as a whole, adopting such a definition would not be a commonsense understanding of the purpose of the warrant or the terms used therein. For these reasons, we conclude that "acceptance," as it was used in the warrant, meant to receive and open the package. With this preliminary issue resolved, we now turn to a consideration of defendant's specific challenges to the warrant.

Defendant first claims that the anticipatory warrant failed to comply with the particularity requirement of the fourth amendment because it authorized police to search any location where the package was accepted. In a related argument, defendant maintains that the triggering condition of the warrant was not narrowly drawn because the warrant was premised on acceptance of the package and it did not limit the places where this acceptance could take place. Defendant concludes that because the warrant lacked particularity and because its triggering

17

condition was not narrowly drawn, the warrant essentially operated as an improper "general warrant" and thereby failed to sufficiently limit police discretion in its execution. We do not agree.

The fourth amendment requires that only two matters be particularly described in a warrant: "'the place to be searched'" and "'the persons or things to be seized.'" *Grubbs*, 547 U.S. at 97, 164 L. Ed. 2d at 204, 126 S. Ct. at 1500. A search warrant is sufficiently descriptive if it enables a police officer executing the warrant, with reasonable effort, to identify the persons or places to be searched. See *Steele v. United States*, 267 U.S. 498, 503, 69 L. Ed. 757, 760, 45 S. Ct. 414, 416 (1925) ("It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended"); *McCarty*, 223 Ill. 2d at 149. The purpose of the particularity requirement is to guard against broad exploratory searches and to ensure that the scope of a search is narrowly tailored. See *Maryland v. Garrison*, 480 U.S. 79, 84, 94 L. Ed. 2d 72, 80, 107 S. Ct. 1013, 1016 (1987) ("The manifest purpose of [the] particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search is carefully tailored to its justifications, and will not take on the character of the wide-ranging general searches that the Framers intended to prohibit"); 2 W. LaFave, Search & Seizure §4.5, at 562 (4th ed. 2004) ("[T]he primary purpose of [the particularity requirement] is to minimize the risk that officers executing search warrants will by mistake search a place other than the place intended by the magistrate"). Thus, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be

found. *Garrison*, 480 U.S. at 84, 94 L. Ed. 2d at 80, 107 S. Ct. at 1016.

The constitutionality of a search warrant similar to the one at issue in this case was considered by the Alaska Court of Appeals in *State v. Morris*, 668 P.2d 857 (Alaska App. 1983). In that case, it was determined that drugs were within a certain package placed with an airline for shipment. Because the package was to be picked up at the airport, the police obtained an anticipatory warrant authorizing a search of the person who picked up the package or the place to which the described package was observed by surveillance to be taken. *Morris*, 668 P.2d at 859. The lower court held that this warrant was an invalid general warrant because it did not sufficiently describe a particular place to be searched. The appellate court disagreed:

> "Although the warrant did not designate a particular place which the police were to search, the warrant does not allow the police authority to search any number of places. Rather the warrant anticipates that a person will pick up the package and take it to a place. Assuming the police are able to follow the package to that place, they are then authorized to then enter that place and seize the package. The warrant anticipates a search of that particular place and limits the search to a search for that package. We simply do not see this warrant as being so general in nature that the constitution requires us to condemn it as a general warrant and to rule that the warrant was invalid for any purpose." *Morris*, 668 P.2d at 862.

19

Similarly, we do not believe that the warrant in this case operated as a "general warrant" that gave police unlimited discretion as to the places to be searched. Defendant essentially asks us to find that, to satisfy the fourth amendment, the warrant in this case must have defined the location to searched by a particular address. However, the fourth amendment contains no such requirement, and defendant has presented us with no case law stating that a warrant, to be constitutional, must in every case state the particular address to be searched. See 2 W. LaFave, Search & Seizure §4.5(a), at 564 (4th ed. 2004) ("It cannot be said that a street address is always essential [to satisfy the particularity requirement], for even in the absence of such description the other facts stated may make it clear to the executing officer what place is intended"). For the reasons that follow, we cannot say that the warrant did not set forth a sufficient description which would enable a police officer using reasonable efforts to identify the place to searched with the requisite degree of certainty.

In this case, although the warrant allowed police to search any location where the package was accepted, it did not give police unlimited authority to conduct a broad search of any number of places. Rather, the warrant was narrowly drawn such that police had little discretion in determining whether there was probable cause to conduct a search. The warrant anticipated that defendant or another person would pick up the package and bring it to another location, and the warrant was tied to that specific package bearing a particular tracking number and allowed police to search only the location where the package was brought and opened. There was no discretion or guesswork necessary to make this determination, as the tracking device inside the package immediately alerted police to when the package was being moved and when it was ultimately

20

opened. Police had only to follow the package, wait until the tracking device indicated that it had been opened, and then execute the warrant. We conclude that the under the circumstances presented here, the location to be searched was sufficiently defined by the specific package addressed to defendant and the location where that package was opened such that the police, using reasonable efforts, could ascertain the precise location to be searched. Accordingly, the anticipatory warrant did not violate the particularity requirement of the fourth amendment.

We believe that our holding strikes the appropriate balance between the purpose of the warrant requirement and the need for the judiciary to encourage the use of warrants and to recognize that anticipatory warrants meet important law enforcement needs. The purpose of the warrant requirement is to act as a check on police officers "engaged in the often competitive enterprise of ferreting out crime" by interposing a "neutral and detached magistrate" into the process. *Johnson v. United States*, 333 U.S. 10, 14, 92 L. Ed. 436, 440, 68 S. Ct. 367, 369 (1948). Our holding in this case is consistent with this purpose because it encourages police to obtain an anticipatory warrant when they intercept a package containing narcotics and have reason to believe that the package will be brought and opened at a location other than listed on the delivery address. Our holding thereby ensures that a magistrate, and not a police officer, will ultimately determine if there is in fact probable cause to believe that the package will be brought to another location. To require the police to obtain a new warrant after defendant brought the package to his home and then opened it would create the possibility that police would lose track of the criminal and the contraband and would fail to take into account the speed and flexibility with which law enforcement is required to act when dealing with those who traffic in narcotics

21

through the mail system. We recognize the concerns raised by defendant regarding the need to limit police discretion and the potential for police abuse created by general warrants. However, given the particular facts of this case, including the use of the electronic monitoring device inside the package and the information sworn to by Officer Bator regarding narcotics traffickers moving the package to another location, we simply do not believe that those concerns are implicated in this case such that we would be required to find the warrant unconstitutional.

Defendant also claims that the warrant not supported by probable cause because it authorized police to search places for which the magistrate could not make a probable cause determination at the time the warrant was issued. Defendant specifically asserts that the warrant improperly allowed police to search places other than the place of delivery, and that there were no facts showing that the package would be brought to any location other than where it was delivered.

Generally, the fourth amendment requires police to obtain a warrant based on probable cause prior to the search or seizure of a person or his property. *Groh v. Ramirez*, 540 U.S. 551, 559, 157 L. Ed. 2d 1068, 1079, 124 S. Ct. 1284, 1290 (2004). Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332 (1983). "[P]robable cause is a fluid concept - turning on the assessment of probabilities in particular factual contexts." *Gates*, 462 U.S. at 232, 76 L. Ed. 2d at 544, 103 S. Ct. at 2329. A probable cause determination is a "practical, common-sense decision" that should be based on a "totality of the circumstances analysis." *Gates*, 462 U.S. at 238, 76 L. Ed. 2d at 548, 103 S. Ct. at 2332.

22

The Supreme Court has cautioned against overly scrutinizing a magistrates's probable cause determination, as such scrutiny runs counter to the fourth amendment's strong preference for searches conducted pursuant to a warrant. *Gates*, 462 U.S. at 236-37, 76 L. Ed. 2d at 547, 103 S. Ct. at 2331; *United States v. Ventresca*, 380 U.S. 102, 109, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746 (1965) ("[C]ourts should not invalidate *** warrant[s] by interpreting the affidavit[s] in a hypertechnical, rather than a commonsense, manner"). Therefore, a magistrate's determination as to probable cause "'should be paid great deference by reviewing courts'[citation]" (*Gates*, 462 U.S. at 236, 76 L. Ed. 2d at 548, 103 S. Ct. at 2331) and "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants" (*Ventresca*, 380 U.S. at 109, 13 L. Ed. 2d at 689, 85 S. Ct. at 746). As a reviewing court, our task is "simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238-39, 76 L. Ed. 2d at 548, 103 S. Ct. at 2332, quoting *Jones v. United States*, 362 U.S. 257, 271, 4 L. Ed. 2d 697, 708, 80 S. Ct. 725, 736 (1960).

In *Grubbs*, the Supreme Court held that where, as in this case, an anticipatory warrant places a condition precedent on its execution other than the mere passage of time, two prerequisites of probability must be satisfied for the warrant to comply with the fourth amendment's requirement of probable cause. "It must be true not only that *if* the triggering condition occurs 'there is a fair probability that contraband or evidence of a crime will be found in a particular place,' [citation], but also that there is probable cause to believe the triggering condition *will occur*." (Emphasis in original.) *Grubbs*, 547 U.S. at 96-97, 164 L. Ed. 2d at 204,

23

1-05-3880

126 S. Ct. at 1500. The supporting affidavit must provide the magistrate with sufficient information to evaluate both of these prerequisites. *Grubbs*, 547 U.S. at 97, 164 L. Ed. 2d at 204, 126 S. Ct. at 1500.

In this case, the occurrence of the triggering condition - acceptance of the package at the nail salon or another location - would clearly establish probable cause that contraband or evidence of contraband would be found at that location. Defendant takes no issue with this first prerequisite to probable cause, however, nor does he challenge that there was probable cause to believe that the package would be delivered to the nail salon. Rather, defendant claims that because the warrant was ultimately executed at a place other than where the package was delivered, his home, the magistrate who issued the warrant was required to determine that there was probable cause to believe that the package would be brought to that location. Defendant maintains that such a determination was not possible because "no one even knew of the house on Campbell Street" at the time the warrant was issued. We disagree.

The triggering condition of the warrant was acceptance of the package at the nail salon or "any other location" in the State of Illinois. Therefore, pursuant to *Grubbs*, there must have been probable cause to believe that the package would be accepted at a location other than the nail salon. We do not read *Grubbs* to require police to know every possible location where the package could be brought and accepted, including, as defendant suggests, the house on Campbell Street. To adopt such an interpretation would significantly hinder the effectiveness of an anticipatory warrant where narcotics traffickers could simply ship a package containing narcotics to one location and then bring it to another place where it could be safely opened. We decline to

24

do so and instead conclude that, to satisfy the fourth amendment, there must have been probable cause to believe that the package would be accepted at a location other than the delivery address.

We also conclude that such probable cause was provided by the sworn complaint for the search warrant. We note parenthetically that a sworn complaint supporting a search warrant is presumed valid and that, because defendant has not challenged the veracity of the statements in the complaint, we treat those statements as true for purposes of this appeal. See *McCarty*, 223 Ill. 2d at 153-54. In the sworn complaint for the search warrant, Officer Bator stated that a nail salon was located at the delivery address on the package and that an electronic data investigation revealed that defendant did not reside at that address. Officer Bator further stated that his 18 years of experience as a police officer and participation in "hundreds" of postal interdiction search warrant had demonstrated that narcotics traffickers could move the parcel to another location or intercept it from the courier on the street and place it into a location other than that listed on the address label. In light of these statements, we find that the magistrate had a substantial basis for concluding that probable cause existed to believe that the package would be accepted at a location other than the delivery address.

Moreover, even if we were to conclude that the search warrant was not supported by probable cause, we find that the evidence obtained pursuant to the warrant would be admissible under the good-faith exception to the exclusionary rule.

The Supreme Court first articulated the good-faith exception to the exclusionary rule in *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). In that case, the Court held that the exclusionary rule will not bar evidence obtained by a police officer who

25

reasonably and in objective good faith relied on a search warrant that was issued by a neutral and detached magistrate but was later found not to be supported by probable cause. See *Leon*, 468 U.S. at 926, 82 L. Ed. 2d at 700-01, 104 S. Ct. at 3422 ("In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause"). The Court in *Leon* explained that the purpose of the exclusionary rule is to deter police misconduct rather than to punish the errors of judges and magistrates, and that the exclusionary rule cannot deter a police officer who reasonably and in good faith believes he possesses a valid warrant from conducting a search pursuant to that warrant. *Leon*, 468 U.S. at 916, 918-21, 82 L. Ed. 2d at 694, 696-97, 104 S. Ct. at 3417-19. Our supreme court adopted the *Leon* good-faith exception for Illinois in *People v. Stewart*, 104 Ill. 2d 463, 477 (1984) ("Even if one assumes a lack of particularity in the affidavits, the agents' reasonable and good-faith belief, although a possibly mistaken one, that the searches were authorized under the warrant, insulated the searches from a motion to suppress").

In this case, there is no allegation that the magistrate abandoned his neutral and detached role in issuing the warrant. There are no obvious defects on the face of the warrant or the sworn complaint in support thereof. There is nothing in the record to suggest that the police were reckless or dishonest in preparing the warrant or the sworn complaint. The complaint sets forth the manner in which police originally discovered the narcotics and contains a straightforward and detailed account of how the warrant would be executed. The complaint also sets forth the reasons police sought permission for the warrant to allow them to search any location other than

26

the salon where the package was accepted. Finally, the police could have objectively and reasonably believed in the existence of probable cause. The warrant allowed police to deliver the package and then to search defendant or anyone who took control of the package and the nail salon or any other location where the package was accepted. After the package was signed for and placed on the counter by the lady working at the nail salon, defendant went to the salon to retrieve the package. He did not open the package at the salon but, rather, left immediately, brought the package to the house on Campbell Street, and opened it inside of his bedroom. Police were aware of all of this information because they were following the package and defendant in their vehicles and because the signaling device alerted them to when the package was being moved and when it had been opened. Under these circumstances, we find that the police could have reasonably and objectively believed that they had probable cause and authority pursuant to a valid warrant to enter the house and conduct a search. Therefore, the good-faith exception to the exclusionary rule applies and, even if the warrant was not supported by probable cause, the evidence obtained pursuant to that warrant would still be admissible.

Defendant, citing *People v. Reed*, 202 Ill. App. 3d 760 (1990), nevertheless argues that the good-faith exception does not apply where the warrant is based on a "bare-bones" affidavit, and he asserts that such is the case here because the affidavit did not name the places to be searched or describe these locations with particularity. In *Reed*, the affidavit was considered "bare-bones" because none of the defendants in question were named or otherwise described in the warrant. *Reed*, 202 Ill. App. 3d at 764. In this case, however, defendant was specifically named in the warrant and, as we have already held, the warrant named and described the places to

27

be searched with sufficient particularity.

Defendant, again citing *Reed*, also argues that by authorizing the search of anywhere the package was accepted, the warrant was "so facially overbroad" that the officers could not have reasonably believed it was valid. In *Reed*, the warrant was found to be "so facially overbroad" because it allowed police to search anyone inside a public tavern. *Reed*, 202 Ill. App. 3d at 764. Here, in contrast, we cannot say that the police did not have a reasonable basis to believe the package would be picked up from the salon and brought to another location and, as discussed, the warrant authorized police to search only that location where the package was accepted. Accordingly, the warrant was not so overbroad that the police could not have reasonably believed it was valid.

Defendant finally argues that the good-faith exception does not apply where police exceeded the scope of the warrant, and he asserts that, because the package was only accepted at the salon, the police exceeded the scope of the warrant by searching his home. See *People v. McPhee*, 256 Ill. App. 3d 102, 110 (1993) (finding that the good-faith exception did not apply because police acted outside the scope of a valid warrant). This argument is without merit in light of our holding that, as the term was meant in the warrant, the package was not "accepted" when it was signed for by the woman in the nail salon but, rather, when defendant brought the package to the house on Campbell Street and opened it. These are the only circumstances under which the warrant anticipated police would conduct a search, and it is under these same circumstances in which police did, in fact, execute the warrant and search defendant's home.

In conclusion, we find that the warrant in this case was constitutional and satisfied the

fourth amendment because it described the places to be searched with particularity and it was supported by probable cause. Moreover, even if the warrant was not supported by probable cause, we find that the good-faith exception to the exclusionary rule applies and that the evidence obtained pursuant to the warrant would therefore still be admissible. Accordingly, because we find no error in the warrant, defendant's challenges to that warrant do not rise to the level of plain error. *Smith*, 372 Ill. App. 3d at 184.

We acknowledge the State's arguments that even if the warrant was unconstitutional, the evidence obtained by police would also be admissible under the doctrines of exigent circumstances and inevitable discovery. However, in light of our holdings above, we choose not to address these claims.

Defendant argues in the alternative that even if the warrant was valid, the police exceeded its scope by searching the house on Campbell Street. Defendant's argument is essentially that the warrant authorized police to search anywhere the package was accepted, that "accepted" means "to receive" or "to take in," and that therefore the package was accepted at the nail salon when it was received and signed for by the woman at the counter. Defendant concludes that although he entered the house carrying the package, "no one accepted it under the ordinary meaning of the word" and thus police exceeded the scope of the warrant by entering the house and conducting a search.

This argument is without merit in light of our holding above that "accepted," as used in the warrant, meant to receive and open the package. Under that interpretation, the package was not accepted by the woman at the salon but, rather, when defendant brought the package into his

29

home and opened it. Accordingly, the police did not exceed the scope of the warrant by searching defendant's home.

Defendant further contends that the State failed to prove him guilty of possession of a controlled substance with intent to deliver beyond a reasonable doubt. Specifically, defendant asserts that there was no evidence establishing that he knew the UPS package contained narcotics or that, once he opened the package, he knew the dietary supplement bottle contained illegal ecstasy. Alternatively, defendant argues that even if it can be inferred that he knew the tablets were narcotics, he did not have sufficient time to rid himself of them for his possession to be considered voluntary.

When reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). The trier of fact is responsible for assessing the credibility of the witnesses, weighing the testimony, and drawing reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). A criminal conviction will not be set aside on appeal unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *People v. Cox*, 195 Ill. 2d 378, 387 (2001).

In order to sustain defendant's conviction for possession of a controlled substance with intent to deliver, the State was required to prove that: (1) defendant had knowledge of the presence of the narcotics; (2) the narcotics were in defendant's immediate possession or control; and (3) defendant intended to deliver the narcotics. *People v. Robinson*, 167 Ill. 2d 397, 407

(1995). Here, defendant claims that the State failed to prove the element of knowledge beyond a reasonable doubt. We disagree.

The element of knowledge is rarely susceptible to direct proof and is usually established by circumstantial evidence. *People v. Sanchez*, 375 Ill. App. 3d 299, 301 (2007). Knowledge may be established by evidence of acts, statements or conduct of the defendant, as well as the surrounding circumstances, which supports the inference that he knew of the existence of narcotics at the place they were found. *People v. Nwosu*, 289 Ill. App. 3d 487, 494 (1997); *Sanchez*, 375 Ill. App. 3d at 301. Moreover, where narcotics are found on premises that are under defendant's control, it may be inferred that he had the requisite knowledge and possession, absent other facts and circumstances which might create a reasonable doubt as to defendant's guilt. *People v. Denton*, 264 Ill. App. 3d 793, 798 (1994); *People v. Bell*, 53 Ill. 2d 122, 126 (1972). The necessary control over the premises may be proved by showing that defendant lived there. *People v. Lawton*, 253 Ill. App. 3d 144, 147 (1993).

In this case, the record shows that the UPS package that was intercepted by police was shipped to defendant at the nail salon where he worked by someone who provided false sender information. The package contained a dietary supplement bottle in which there was a plastic bag containing 4,997 ecstacy tablets with an estimated street value of $125,000. Approximately four hours after the package was delivered by police, defendant drove to the salon and was inside for only five minutes before he returned to his vehicle carrying the unopened package. Defendant then drove from the salon, located at 11213 South Michigan Avenue, to a house located at 6546 North Campbell Street. Defendant entered the house and immediately went to the basement.

31

Five minutes after defendant entered the house, police were alerted through their signaling devices that the package had been opened. Police then entered the apartment and immediately proceeded downstairs, where defendant was seen exiting a bedroom. When asked by police if the room he had just exited was his bedroom, defendant "nodded" toward that room and said "there." Michael Pham, who lived in the house with his family, similarly testified that defendant lived in that bedroom. When police entered the bedroom, the package had been opened, the supplement bottle had been removed from it, and the pink pills could be seen inside the bottle. An open suitcase was also on the floor, and inside was an open safe and a black bag. The bag contained a digital gram scale and a number of small, plastic bags. The safe contained 17 small plastic bags which contained 20 grams of cocaine. Police also found bullets and a magazine clip inside the ceiling tiles in defendant's bedroom.

The record thus demonstrates that the narcotics were recovered from plain view on the floor of defendant's bedroom at a time when defendant was seen exiting that room. Absent other facts and circumstances, this alone is sufficient to create an inference of knowledge. *Denton*, 264 Ill. App. 3d at 798. This inference is strongly supported by the presence of other drug paraphernalia in defendant's bedroom, including the digital gram scale, small plastic bags, and cocaine. See *People v. McDonald*, 227 Ill. App. 3d 92, 99 (1992) (defendant's knowledge and possession of narcotics were supported by evidence that cocaine and drug paraphernalia were recovered from plain view on the table of defendant's living room, at a time when defendant was a few feet away in another room); *Nwosu*, 289 Ill. App. 3d at 494-95 (finding that defendant knowingly possessed cocaine in package addressed to him from outside the United States based

32

upon evidence showing that customs officer, after finding cocaine in false bottom of suitcase contained in package, had made controlled delivery of package to defendant, that defendant seemed anxious upon delivery, and that approximately 20 minutes later cocaine was discovered in defendant's bedroom along with ripped-out bottom of suitcase); *Denton*, 264 Ill. App. 3d at 799 (defendant proved guilty of possession of cocaine beyond a reasonable doubt based on evidence that a large quantity of cocaine, a safe containing cash, a revolver, a cache of ammunition and proof of defendant's residency were all found in defendant's bedroom, and evidence that equipment used in preparation of cocaine for delivery was found in nearby kitchen).

In addition to the presence of the narcotics and drug paraphanelia inside defendant's bedroom, the other facts and circumstances of this case support the inference that defendant knowingly possessed narcotics. The jury could infer that defendant drove to work solely to pick up the package because there was no evidence that defendant was required to be at work on the day in question and defendant drove to the salon and was inside for only several minutes before he left with the package. Then, although the package was sent to defendant's work by someone who provided false sender information, defendant did not open the package at the salon but rather drove a considerable distance across the city to the house in which he lived. Defendant entered the house and immediately went to the basement, and within five minutes, he had opened the package and the supplement bottle.

Whether defendant had knowledge of the presence of narcotics is a question of fact for the jury (*Denton*, 264 Ill. App. 3d at 798), and in this case the jury concluded that defendant knew of the presence of narcotics inside the package. Considering all of the facts and circumstances

described above, we find no reason to disturb the jury's verdict. Accordingly, defendant was proved guilty beyond a reasonable doubt.

In reaching this conclusion, we find unpersuasive defendant's attempt to liken the facts in this case to those in *People v. Hodogbey*, 306 Ill. App. 3d 555 (1999), and *People v. Ackerman*, 2 Ill. App. 3d 903 (1971). In *Hodogbey*, the court stated the evidence proved only that after the accused accepted delivery of a package addressed to him, he did not open or hide the package after receipt, and when approached by police, he did not flee or resist them. *Hodogbey*, 306 Ill. App. 3d at 561. In *Ackerman*, the court stated that the evidence only proved that defendant received a package in the course of normal mail delivery and placed it under his arm "for about five seconds." *Ackerman*, 2 Ill. App. 3d at 905-06. In both cases, the facts presented were insufficient to support an inference of knowledge that the packages contained narcotics. *Hodogbey*, 306 Ill. App. 3d at 560; *Ackerman*, 2 Ill. App. 3d at 906. We think it is clear that neither of these cases is factually similar to the present case in that they do not involve the circumstances and sequence of events described above, which began with defendant picking up the package containing narcotics at the nail salon and culminated in police finding the narcotics and other parapharnelia in plain view on defendant's bedroom floor. Therefore, these cases provide no basis for reversing the jury's finding that defendant knowingly possessed narcotics.

We also reject defendant's assertion that he did not have sufficient time to rid himself of the narcotics after discovering them inside the bottle in order for his possession to be considered voluntary. Initially, this point is waived because defendant is essentially advancing the position that he did not voluntarily possess the narcotics and his argument in support of this contention

34

consists of a single sentence. See 210 Ill. 2d R. 341(h)(7) (appellant's brief is required to include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *People v. Patel*, 366 Ill. App. 3d 255, 268-69 (2006) (a point raised but not sufficiently presented fails to comply with Supreme Court Rule 341(h)(7) and is, therefore, waived). Additionally, defendant's assertion assumes that he possessed the narcotics only after he opened the package and discovered the pills inside the supplement bottle. However, based upon all of the facts and circumstances described above, the jury could reasonably infer that defendant knew of the presence of narcotics inside the package from the moment that he picked it up at the nail salon. We do not find that defendant's assertion to the contrary creates a reasonable doubt as to his guilt.

Defendant next contends that he was denied a fair trial when the jury heard testimony that police found a box of ammunition and a magazine clip inside the ceiling panels of his bedroom. The determination as to whether evidence is relevant and admissible is within the sound discretion of the trial court, and its ruling will not be reversed absent a clear abuse of discretion resulting in manifest prejudice to the defendant. *People v. Morgan*, 197 Ill. 2d 404, 455 (2001).

The record shows that Officer Solava, the first witness called by the State, testified that police found the ammunition and magazine clip behind the ceiling tiles in defendant's bedroom. Defense counsel raised no objection to this testimony. Officer Bator, who was called as a witness after Officer Solava, was preparing to give similar testimony regarding the items found behind the ceiling tiles when defense counsel objected and argued that the testimony was prejudicial and irrelevant. The trial court overruled defense counsel's objection, noting that the jury had already

35

heard about the discovery of these items through Officer Solava's testimony and that the items were relevant to establishing defendant's intent to deliver narcotics. These items were later admitted into evidence over defense counsel's objection.

Defendant now claims that the trial court erred by allowing Officer Bator's testimony regarding the ammunition and magazine clip because there was insufficient evidence to connect him to these items. Defendant further maintains that the error was compounded when the prosecution made repeated references to the ammunition and magazine clip during closing arguments.

We find that defendant's claim is waived. In order to preserve an issue for appeal, defendant must raise an objection at trial and include the objection in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). In this case, Officer Solava was the first witness to testify to the discovery of the ammunition and magazine clip, and the record shows that she did so without objection from defendant. Moreover, although defendant raised an objection to similar testimony by Officer Bator, he failed to include this issue in his posttrial motion.

Defendant acknowledges that this contention is waived, but requests that we consider the issue under the plain error rule. However, we must first determine whether error occurred at all (*Smith*, 372 Ill. App. 3d at 181), and, for the reasons that follow, we find that no such error occurred.

In this case, the State was required to prove, among other things, that defendant intended to deliver the narcotics in his possession. *Robinson*, 167 Ill. 2d at 407. Direct evidence of intent to deliver is rare, and therefore such intent must usually be proved by circumstantial evidence.

36

*Robinson*, 167 Ill. 2d at 408. The possession of weapons is one of many factors Illinois courts consider as probative of intent to deliver. *Robinson*, 167 Ill. 2d at 408. Therefore, in this case, testimony establishing the discovery of the magazine clip and the ammunition behind the ceiling tiles in defendant's bedroom was relevant and properly admitted to support the inference that defendant intended to deliver the narcotics.

Defendant nevertheless argues that there was insufficient evidence to connect him to these items because the ceiling tiles were too "remote" of a location, because the items could have been placed in the ceiling tiles by the previous occupants of the house, and because other residents of the house had access to the basement. See *People v. Evans*, 373 Ill. App. 3d 948, 960 (2007) (to be admissible, evidence regarding a weapon must be sufficiently connected to both the crime and the defendant). We disagree.

Although defendant was not found in actual possession of the ammunition and magazine clip, there was strong circumstantial evidence to support a finding that defendant constructively possessed these items. See *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002) (noting that evidence of constructive possession is "often entirely circumstantial"). Most importantly, the items were found behind the ceiling tiles in defendant's bedroom, and control over the location where weapons are found gives rise to an inference that defendant possessed the weapons. See *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). Moreover, the presence of the narcotics and other parapharnelia in the bedroom only strengthens the inference that defendant knew of the presence of the ammunition and magazine clip. We do not agree with defendant's argument that the ceiling tiles are a location "so remote that it is likely that [he] did not know of their existence,"

and the fact that the items were behind the ceiling tiles and not visible to defendant plausibly suggests that he was trying to conceal them. See *People v. Trask*, 167 Ill. App. 3d 694, 708-09 (1988) (finding that defendant constructively possessed a weapon found in a hole in the wall of one of the bedroom's of his residence, and noting that although the gun was not visible to defendant, this only suggested that he was concealing it). Finally, although other residents of the house had access to the basement, it is well settled that mere access to an area by others is insufficient to defeat a charge of constructive possession. See *Peopel v. Hill*, 226 Ill. App. 3d 670, 673 (1992); *Trask*, 167 Ill. App. 3d at 707.

For all of these reasons, we cannot say that the trial court abused its discretion by allowing Officer Bator to testify to the discovery of the ammunition and magazine clip or by admitting these items into evidence. This conclusion is strengthened by the fact that, prior to Officer Bator's testimony, the jury had already heard Officer Solava testify to the discovery of these items in defendant's bedroom and therefore Officer Bator's separate account of this evidence was cumulative. See *People v. Kidd*, 175 Ill. 2d 1, 35 (1996) (finding that defendant was not denied a fair trial based upon improperly admitted hearsay testimony where the jury had already heard the substance of that testimony through another witness and therefore the improper testimony was cumulative). Accordingly, because we find that no error occurred in the admission of this evidence, defendant's contention to the contrary does not rise to the level of plain error. *Smith*, 372 Ill. App. 3d at 184.

Defendant next contends that the trial court erred by refusing to instruct the jury regarding possession as a voluntary act. During the instruction conference, defendant tendered Illinois

38

1-05-3880

Pattern Jury Instructions, Criminal, No. 4.15 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 4.15), which provides as follows:

"Possession is a voluntary act if the person knowingly procured or received the thing possessed, or was aware of his control of the thing for a sufficient time to have been able to determine his possession."

The trial court denied the instruction, stating that the relevant and disputed issue during trial was whether defendant had knowledge as to the contents of the package.

Defendant claims that the trial court's ruling was error because there was sufficient evidence in the record to warrant the instruction. Defendant argues that the jury could have concluded that his possession was not voluntary based upon the short period of time between when he opened the supplement bottle and discovered the narcotics and when police found him outside his bedroom. Without the instruction, defendant maintains, the jury lacked guidance in determining his guilt.

A defendant is entitled to an instruction on his theory of the case if there is some foundation for the instruction in the evidence. *People v. Jones*, 175 Ill. 2d 126, 131-32 (1997). However, jury instructions must be considered as a whole, and it is sufficient if the instructions that were given fully and fairly announce the law applicable to the theories of the State and the defense. *People v. Salazar*, 211 Ill. App. 3d 899, 912 (1991). We review the trial court's decision to not give a jury instruction under an abuse of discretion standard. *People v. Davis*, 213 Ill. 2d 459, 475 (2004).

39

In *People v. Redmond*, 73 Ill. App. 3d 160 (1979), the court considered a claim similar to that raised by defendant in this case. In *Redmond*, defendant was pulled over while in a vehicle and a search revealed the presence of narcotics on his person and in a purse he was carrying. *Redmond*, 73 Ill. App. 3d at 163. Defendant's theory at trial was that the narcotics were either planted by police or were not actually in his possession but were falsely testified to by police, and defendant testified that he had no knowledge of the narcotics and that he did not observe the officers recover anything from his person or purse. The trial court denied defendant's request that the jury be instructed regarding possession as a voluntary act, and, on appeal, defendant argued that the refusal to give the instruction denied him the opportunity to have the jury instructed on his theory of defense. Defendant specifically asserted that to merely instruct the jury that defendant must have "knowingly possessed" the narcotics was insufficient without the further requirement that the jury find, among other things, that he had sufficient time after he had knowledge of the narcotics to terminate possession. *Redmond*, 73 Ill. App. 3d at 177. We disagreed and noted that if the jury had believed defendant's testimony at trial, it could not have found that he "knowingly possessed" the narcotics and that defendant presented no other evidence from which the jury could have inferred that he might have been aware of the narcotics but did not have sufficient time to terminate his possession. We further noted that without such other evidence, the meaning of the instruction was unclear and its submission would have confused and misled the jury. *Redmond*, 73 Ill. App. 3d at 177.

In this case, our review of the record establishes that the disputed issue at trial was knowledge, not voluntary possession. Defendant focused on this element during trial and argued

that he was not aware of the narcotics inside the package. The record also shows that the trial court instructed the jury on the burden of proof, the presumption of innocence, the definitions of intent as well as actual and constructive possession, and the necessary elements of possession of a controlled substance with intent to deliver. These instructions informed the jury that the State was required to prove, among other things, that defendant "knowingly possessed" the narcotics with the intent to deliver, and that it should find defendant not guilty if this proposition was not proved beyond a reasonable doubt. Under these circumstances, if the jury believed that defendant was unaware of the narcotics inside the package or that he gained this knowledge only after opening the package, it could not have found that defendant "knowingly possessed" the narcotics or, of equal importance, that he did so with the intent to deliver them. Therefore, given the lack of evidence indicating that defendant's possession was involuntary and the fact that the disputed issue at trial was knowledge, the meaning of the requested instruction would have been unclear and its submission would have only served to confuse the jury. See IPI Criminal 4th No. 4.15, Committee Comments, at 130 (noting that the instruction "should be given only if voluntariness is an issue"); *Redmond*, 73 Ill. App. 3d at 177. We find that the instructions that were given by the trial court, considered as a whole, fully and accurately instructed the jury on all of the relevant law and, accordingly, the court did not abuse its discretion by refusing to tended the requested instruction.

We also find that any error in refusing to instruct the jury was harmless. The refusal to give an instruction is harmless error when the evidence of defendant's guilt is overwhelming such that the result of the trial would not have been different if the instruction had been given. *People*

*v. Ward*, 187 Ill. 2d 249, 265 (1999). In this case, the evidence described above overwhelmingly proved defendant guilty beyond a reasonable doubt, and we therefore cannot say that the result of defendant's trial would have been different had the jury been instructed on possession as a voluntary act.

Defendant finally contends that one of his convictions must be vacated because it violates the one-act, one-crime principle. Defendant asserts that both of his convictions were based on the same physical act, possession of the pink tablets, and that this runs afoul of our supreme court's holding in *People v. King*, 66 Ill. 2d 551, 566 (1977), that a defendant may not be convicted of multiple offenses when those offenses are based on precisely the same physical act.

We find that this issue is waived because defendant did not raise it during sentencing or in a posttrial motion. See *Enoch*, 122 Ill. 2d at 186. Defendant argues that we should consider the issue under the plain error rule. We first consider whether there was error (*Smith*, 372 Ill. App. 3d at 181), and, for the following reasons, we find no error in this case.

Although not cited by defendant, we note that in *People v. Manning*, 71 Ill. 2d 132, 137 (1978), our supreme court held that, absent a statutory provision to the contrary, the simultaneous possession of more than one type of controlled substance constitutes a single act for which there can be but one conviction. However, *Manning* was later superceded by an amendment to the Illinois Controlled Substances Act (the Act), which expressly authorized multiple convictions where a defendant simultaneously possesses more than one type of controlled substance. See 720 ILCS 570/402 (West 2004) ("[a] violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act");

1-05-3880

*People v. Carter*, 213 Ill. 2d 295, 302-03 (2004) (recognizing that *Manning* was superceded by amendment and that the Act now allows for multiple convictions based on simultaneous possession of different drugs).  In this case, the stipulations at trial established that the pills tested positive for MDMA and methamphetamine, both of which are listed as controlled substances under the Act.  Therefore, in light of the statutory amendment to the Act, we find no error in defendant's convictions for both possession of MDMA with intent to deliver and possession of methamphetamine with intent to deliver.  Accordingly, defendant's contention does not rise to the level of plain error.  *Smith*, 372 Ill. App. 3d at 184.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

McNULTY and O'MALLEY, JJ., concur.