2021 IL App (1st) 182044-U

No. 1-18-2044

Order filed June 30, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 13158 |
| | ) | |
| DION NEWTON, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mikva concurred with the judgment.
Justice Harris dissented.

**ORDER**

¶ 1    *Held*:  We vacate defendant's conviction and remand for a new trial, where the trial court erred in not permitting the jury instruction for the lesser included offense, criminal trespass to a vehicle, when there was some evidence presented at trial, that if believed by a jury, could have resulted in a conviction of that offense. We find defendant was improperly sentenced as a Class X offender based on the plain language of the statute pursuant to section 5-4.5-95(b) (730 ILCS 5/5-4.5-95(b) (West 2018)) of the Unified Code of Corrections. We find the prosecutor's statements in closing argument to be improper, however, there is no plain error where defendant cannot show the requisite prejudice.

¶ 2    Following a jury trial, defendant Dion Newton was found guilty of possession of a stolen vehicle and was sentenced to eight years' imprisonment. On appeal, defendant contends that: (1) the trial court erred in denying his request to submit a jury instruction for the lesser included offense of criminal trespass to a vehicle; (2) defendant should not have been sentenced as a Class X offender, and (3) the State's closing argument was improper when it made misstatements of law and fact. For the following reason, we vacate and remand.

¶ 3                                    BACKGROUND

¶ 4    Defendant was arrested and charged with possession of a stolen vehicle in connection with events that occurred on August 26 and 28, 2017[1].

¶ 5    At trial, Emmanuel Udoh (Emmanuel) testified that on August 26, 2017, at approximately 10 p.m. he was in the area of 62nd and Ashland in Chicago. He was driving his mother's black 2002 Nissan Xterra to J & J's Fish Shack (J&J). Upon arriving at J&J, Emmanuel parked the vehicle on 62nd Street facing Ashland, so he would be able to drive out easily after retrieving his food. As he was walking to the car from J&J, Emmanuel was approached by two males who asked him "are you going to come off those keys." Emmanuel felt threatened and understood them to mean that he should give them his car keys. Emmanuel had his keys in his hand and one of the men reached for them, at that point Emmanuel lifted the hand the keys were in and swung at the man; he missed. The same man then swung at Emmanuel, striking him, resulting in Emmanuel dropping the keys and backing away from the men. Emmanuel walked home while also calling the police to report the incident.

---

[1] The events occurred in 2017 and this order will reflect that, however, throughout the trial and pleadings the parties refer to the year in question as 2018.

¶ 6    On August 28, 2017, Emmanuel was informed that the police recovered the vehicle and they wanted him to come in to identify the two men in a photo array. Emmanuel signed a form before viewing the photo array. Emmanuel identified an individual who he thought took the vehicle from him but admitted that the conditions that night were dark, and the incident happened within "seven or eight seconds." Emmanuel identified the State's Exhibit 1 as a title certificate showing that his mother, Mary Udoh, owned the 2002 Nissan Xterra, and confirmed that he and his mother shared the vehicle. Emmanuel identified the State's Exhibit 2 as a photo of the 2002 Nissan Xterra, and it was in the same condition as when he drove it on August 26, 2017.[2] Emmanuel testified that he did not know defendant and did not give him permission to drive his car on August 28, 2017.

¶ 7    On cross examination Emmanuel testified that his name was not on the title, instead it was only in his mother's name. Emmanuel testified that defendant's photo was among the photos that were shown to him, however, he did not identify defendant as one of the two men involved and instead identified a man that was not defendant. Emmanuel clarified that the form he signed before viewing the photo array permitted him to be video and audio recorded.

¶ 8    Chicago Police Officer Daniel Symons testified that on August 28, 2017, at approximately 12:30 a.m., he was working patrol with his partner Officer Girard near 63rd Street and Ashland. Symons testified that he saw a black Nissan Xterra go past his patrol vehicle and he ran the license plates to check for expired registration. The license plate number Z429045 was listed as stolen. Symons then radioed into dispatch to verify that the stolen status was still valid. Symons received confirmation, indicated the direction in which the vehicle was travelling, and proceeded to follow the vehicle westbound on 63rd Street. No other cars were between the stolen car and the patrol car. While waiting for assisting units, Symons activated his lights and curbed the stolen vehicle.

---

[2] At this time, the State moved to enter Exhibit 2 into evidence and defendant did not object.

Symons exited his vehicle and approached the driver's side of the curbed vehicle. Symons had the driver of the vehicle exit the car and identified the driver to be defendant. Symons' body camera video was shown to the court.

¶ 9    On cross examination, Symons testified that defendant was cooperative during his detainment.  He did not observe any damage to the steering column before transporting defendant to the police station and processing him. On redirect examination Symons testified that after processing, Detective Freitag took over the investigation.

¶ 10    Chicago Police Detective Thomas Freitag testified that on August 28, 2017, at approximately 1 a.m. he was working as a detective in a robbery unit and was assigned to this case. Freitag gave defendant his *Miranda* rights and, at defendant's request, talked to him in the processing area at approximately 5 a.m. Freitag identified defendant in court as the person he spoke to. Defendant told Freitag that he saw a man exit a vehicle quickly while on a phone followed by a group of people running toward the car. Defendant stated that he ran towards the car and told the group to not take the car. He got in the vehicle, which had the keys in the ignition and was running, along with another man who he did not know. He stated that he tried to park the vehicle but instead drove away with the other man still inside. The other man stated he wanted to sell the car to which defendant told him no. Defendant told Freitag that he did not see anyone touch the man on the phone and that he did not touch him either. Defendant knew the person on the phone from the neighborhood and he proceeded to drive around looking for the owner so he could give back the car. He could not find him, so he proceeded to keep the car because his car was in the shop and the car was actually helping him. He kept going back to the spot where the man walked away from the car, but never saw him and he did not know where he lived. When Freitag asked defendant

why he did not just take the car to the police, he told him he probably should have but he did not steal the car. At that point, defendant had nothing else to say.

¶ 11    On cross examination Freitag testified that there were many ways to take a statement from someone in custody such as having that person write a statement, write the statement himself, or record the statement where mandated by the law. Those methods were not used to take defendant's statement. Freitag testified that videotape recording is not available to detectives at the seventh district. Emmanuel was videotaped by a detective from another district, who was located at the seventh district at the time. On redirect examination, Freitag testified that he memorialized defendant's statement in his supplemental reports and that defendant's statement was not required to be recorded pursuant to the statute. Emmanuel's identification from the photo array was recorded with Emmanuel's consent. On recross examination, Freitag admitted that he never gave defendant the option to have his statement recorded.

¶ 12    Defendant's motion for a directed verdict was denied.

¶ 13    Defendant sought to have instructions submitted to the jury that included the lesser included offense of trespass to a vehicle. Defendant argued that based on the evidence submitted to the jury, that could be an issue for it to consider. The State objected to the inclusion of the instruction of criminal trespass to a vehicle, arguing it to be inapplicable because no evidence was presented to warrant the jury receiving that instruction. Defendant's statement showed that he took the vehicle by theft and continued to possess it. In rebuttal, defendant argued that no one had identified defendant as having taken the vehicle. It was up to the jury to make credibility determinations on the evidence presented. The trial court denied the request for an instruction on criminal trespass to a vehicle. In denying the request, the trial court provided a short synopsis of the evidence, stating it did not demonstrate that a criminal trespass to a vehicle occurred: defendant

was present when the car was taken by force, got in the car, and two days later was still caught driving the car.

¶ 14    The State entered its exhibits into evidence and rested its case-in-chief. Defendant rested its case without presenting any witnesses.

¶ 15    The trial court informed the jury that the parties were about to present closing arguments and admonished the jury that closing arguments were not to be considered evidence. The court further admonished the jury that the evidence had already been presented and when they go into the jury room, they were to make their determination on the evidence. Additionally, the court stated that if anything was said by the parties in closing arguments that the jurors felt was not based in evidence; it should be disregarded.

¶ 16    The State summarized the evidence as defendant taking something that did not belong to him and consequently was charged with possession of a stolen vehicle. The State argued that possession was established when the bodycam showed defendant in possession of the vehicle. Their case was further supported by Freitag's testimony that defendant admitted that when he saw the vehicle was still running with the key in it, he got in it and drove off. Additionally, the victim established that defendant was not entitled to possession and defendant knew the vehicle was stolen because of the statements that he made to Freitag.

¶ 17    Defendant argued that he did not take anything that did not belong to him which was evident from the testimony presented. Defendant noted that everything in the case was recorded except defendant's statement to Freitag. Freitag did not take defendant's statement by having defendant write it, by writing it for the defendant, or by recording it in any other manner. The reason, defendant argued, was because the photo array yielded negative results as to an identification of defendant. Additionally, there was a series of events that demonstrated that

defendant did not attack the victim, so instead of pursuing the individuals that actually took the vehicle, the state pieced together what they knew and stuck it on defendant. It was up to the jury to determine the statement's credibility.

¶ 18    In rebuttal, the State reiterated that defendant took something without permission and acknowledged that "[t]he police didn't record his statement, because they followed the law. . . "[t]hat's not a crime that they can video record the defendant." Defendant objected, and the trial court overruled the objection. The State continued, "[a]nd he didn't give his permission to be recorded.  So, no, there isn't a recording of that, because the police followed proper procedures, and they did their job that day." The State distinguished Emmanuel's recording by arguing that he was a victim, and he gave his consent to be recorded. Lastly, the State argued that it did not matter who Emmanuel picked out of the photo array when defendant was found to be in possession of a stolen vehicle.

¶ 19    The trial court reiterated to the jury that the closing arguments were not to be considered evidence. After deliberation, the jury found the defendant guilty of possession of a stolen vehicle. The proceedings were continued for sentencing.

¶ 20    Prior to sentencing, on June 26, 2018, defendant filed a motion for a new trial. The motion argued that: (1) the State failed to prove defendant guilty beyond a reasonable doubt; (2) the finding was against the weight of the evidence; (3) defendant was denied due process of the law; (4) defendant was denied equal protection of the laws; (5) the State failed to prove every material allegation of the offense beyond a reasonable doubt; (6) defendant did not receive a fair and impartial trial; and (7) the trial court erred in overruling the defendant's motion for a directed verdict at the close of the State's case.

¶ 21 On July 2, 2018, defendant was granted leave to proceed *pro se*. Defendant filed a *pro se* motion to dismiss for lack of personal and subject matter jurisdiction arguing that the state of Illinois needed to have an existing contract with defendant in order for it to sue him and for the trial court to have jurisdiction. The trial court instructed defendant that the charging document was controlling and that the complaining witness was the state of Illinois. Defendant's motion to dismiss was denied.

¶ 22 On July 9, 2018, defendant filed a *pro se* motion for a new trial, arguing that: (1) defendant was not given his *Miranda* rights prior to giving a statement; (2) the statement that was made at the police station was not written or otherwise recorded; and (3) defendant was not picked out of a line-up. At the hearing on August 9, 2018, defendant argued the motion *pro se*. The trial court denied the motion for a new trial finding that: the State properly used statements that defendant made after he was provided his *Miranda* rights; the fact that his statement was not written or videotaped was for the jurors to weigh; and even though he was not picked out of the photo array, he was only charged with possessing a stolen vehicle and not with actually stealing it from the victim. At that point, defendant agreed to have defense counsel represent him going forward.

¶ 23 On August 24, 2018, defense counsel was granted leave to file an amended motion for a new trial, which argued that: (1) the trial court erred in denying defendant's motion to suppress statements[3]; (2) the State failed to prove defendant was guilty of the charge beyond a reasonable doubt; (3) the finding was against the weight of the evidence; (4) defendant was denied equal protection of the laws; (5) the State failed to prove every material allegation of the offense beyond

---

[3] Prior to trial, defendant filed a motion to suppress any and all statements or communications he made to any law enforcement official on August 28, 2017. The trial court denied the motion finding that the statements made were permissible pursuant to *Oregon v. Elstad*, 470 U. S. 298 (1985).

a reasonable doubt; (6) defendant did not receive a fair and impartial trial when the trial court: (i) allowed two prior convictions (16 5004791 and 12 C 440125) of defendant, in the event that defendant testified, and (ii) denied defense counsel's request for the lesser included offense jury instruction of criminal trespass to a vehicle; and (6) the trial court erred in overruling the defendant's motion for a directed verdict at the closed of the State's case.

¶ 24   On August 29, 2018, the hearing on the amended motion for a new trial occurred. Defendant briefly pointed out that the trial court erred by denying the motion to suppress statement because *Missouri v. Seibert*, 542 U.S. 600, applied. Defendant argued that the State failed to prove defendant was guilty beyond a reasonable doubt because they never called the owner, Mary Udoh, as a witness. Lastly, defendant argued that the trial court erred in denying the jury instructions for a lesser included offense of criminal trespass to a vehicle.

¶ 25   The State argued that the trial court's decision in the motion to suppress was correct. It did not need to call Mary Udoh when there was a certified title showing she was the owner entered into evidence and Emmanuel testified that he did not provide defendant permission to have the car. Lastly, they argued that they did prove defendant was guilty beyond a reasonable doubt.

¶ 26   The trial court determined that it did not matter if the owner testified or not, the issue was possession not ownership. The vehicle was taken from Emmanuel, who testified, while defendant was in possession of it. [4] The amended motion was denied.

¶ 27   At sentencing, the State offered in aggravation defendant's criminal background which included: a 1994 conviction for aggravated discharge of a firearm (94 CR 06243), a 2001 conviction for unlawful use or possession of a firearm by a felon (01 CR 13086), a 2003 conviction for burglary (03 CR 15542), a 2007 conviction for possession of controlled substances (07 CR

---

[4] Part of the trial court's findings were inaudible for the court reporter.

15631), a 2012 conviction for retail theft (12C4440125), and multiple misdemeanor offenses. The State argued that defendant's 1994 conviction for aggravated discharge of a firearm and 2003 conviction for burglary required him to be sentenced as a Class X offender, which would make his sentencing range 6 to 30 years.

¶ 28    In mitigation, defendant argued that the events of the 1994 conviction occurred when defendant was 15[5] but was adjudicated as an adult. Defendant also offered the following facts in mitigation: obtained his G.E.D., was employed, had high blood pressure, and was diagnosed with a learning disability. Additionally, defendant had a stable family home, but recently lost his mother. As a result, defendant asked for leniency and to be sentenced to six years.

¶ 29    The trial court noted that defendant had five previous felony convictions along with other "minor stuff." Under the totality of the circumstances the trial court found it fitting to sentence defendant as a Class X offender to an eight-year prison term and a three-year mandatory supervised release period.

¶ 30    On the same date defendant filed a motion to reconsider the sentence. The motion argued that the sentence was improper given defendant's background, the trial court considered matters implicit in the offense, the State failed to prove eligibility for enhanced penalty or extended term, and the sentence penalized defendant for exercising his right to trial. There was no argument on the motion, but the trial court found that the sentence of eight years was lenient compared to the 30 years maximum.  As such, the motion was denied, and this timely appeal followed.

¶ 31                                ANALYSIS

¶ 32    On appeal, defendant contends that: (1) the trial court erred in denying his request to submit an instruction to the jury for the lesser included offense of criminal trespass to a vehicle; (2)

---

[5] Defendant was 17 when the crime occurred, which was reflected in the PSI created at the time.

defendant should not have been sentenced as a Class X offender, and (3) the State's closing argument was improper when it made misstatements of law and fact.

¶ 33                                A. Jury Instruction

¶ 34    The State's theory of the case was that defendant knew the vehicle in his possession was stolen because he was the one who intended to permanently deprive the owner of it. However, the State's witness, Freitag, testified that defendant told him that he jumped in the car in an attempt to stop other people who were trying to steal it and that he continued to look for the owner of the car in order to return it to him. Defendant contends that this evidence, if believed by the jury, would warrant a finding that defendant was not guilty of possession of a stolen vehicle but rather criminal trespass to a vehicle. Accordingly, defendant contends, the trial court was obligated to submit this question of fact to the jury and the failure to do so constituted reversable error.

¶ 35    The State contends that the intent to permanently deprive the vehicle owner is not an element of the charge of possession of a stolen vehicle. Therefore, failure to prove the element of intent did not entitle defendant to a jury instruction on criminal trespass to a vehicle.  The State further argued that the trial court properly exercised its discretion in refusing to give an instruction on criminal trespass to a vehicle because there was not sufficient evidence to entitle defendant to such an instruction.

¶ 36    Whether a charged offense includes another as a lesser included offense is a question of law, we review *de novo. People v. Thomas*, 374 Ill. App. 3d 319, 323 (2007). "A defendant is entitled to a lesser-included offense instruction only if the evidence at trial is such that a jury could rationally find the defendant guilty of the lesser offense yet acquit him or her of the greater." *Id*. This court must first determine if an uncharged lesser included offense exists, then we may examine the evidence produced at trial. *People v. Kolton*, 219 Ill. 2d 353, 361 (2006). "Under the

charging instrument approach, an offense may be deemed a lesser-included offense even [if] every element of the lesser offense is not explicitly contained in the indictment, as long as the missing element can be reasonably inferred." *Id.* Whether a particular offense is a lesser included of another is a determination to be made on a case-by-case basis using the factual description of the charged offense in the indictment. *Id.* "A lesser offense will be 'included' in the charged offense if the factual description of the charged offense describes, in a broad way, the conduct necessary for the commission of the lesser offense and any elements not explicitly set forth in the indictment can reasonably be inferred." *Id.*

¶ 37    Possession of a stolen vehicle is defined as:

> "(1) A person not entitled to the possession of a vehicle or essential part of a vehicle to receive, possess, conceal, sell, dispose, or transfer it, knowing it to have been stolen or converted. Knowledge that a vehicle or essential part is stolen or converted may be inferred: (A) from the surrounding facts and circumstances, which would lead a reasonable person to believe that the vehicle or essential part is stolen or converted; or (B) if the person exercises exclusive unexplained possession over the stolen or converted vehicle or essential part, regardless of whether the date on which the vehicle or essential part was stolen is recent or remote;* * * " 625 ILCS 5/4-103(a) (West 2018)

¶ 38    Criminal trespass is defined as follows:

> "(a) A person commits criminal trespass to vehicles when he or she knowingly and without authority enters any part of or operates any vehicle, aircraft, watercraft or snowmobile.

(b) Sentence. Criminal trespass to vehicles is a Class A misdemeanor." 720 ILCS

5/21-2 (West 2018)

¶ 39     Here, the State concedes that criminal trespass to a vehicle has been recognized as the lesser included offense of possession of a stolen vehicle by this court. Further, based on the indictment, the factual description of the charged offense of possession of a stolen vehicle broadly describes the conduct necessary for the lesser offense of criminal trespass to a vehicle. *Thomas*, 374 Ill. App. 3d at 323. The indictment stated that defendant committed the offense of possession of a stolen motor vehicle in that defendant, by being in possession of a motor vehicle, possessed said vehicle knowing it to be stolen or converted. This language contained in the indictment for possession of a stolen vehicle plainly and clearly contains the main outline or broad foundation of the offense of criminal trespass to a vehicle. Although the charged offense did not set forth the element of entry, which is required for criminal trespass to a vehicle, that element can be reasonably inferred. *Id*. Having determined that criminal trespass to a vehicle is an uncharged lesser included offense of the charged offense of possession of a stolen vehicle, we now turn to the evidence. *Kolton*, 219 Ill. 2d at 361.

¶ 40     Jury instructions are intended to "provide the jury with correct legal rules that can be applied to the evidence to guide the jury toward a proper verdict." *People v. Lovejoy*, 235 Ill. 2d 97, 150 (2009). "In a criminal case, the trial court is required to properly instruct the jury on the elements of the offense, the burden of proof, and the presumption of innocence." *Id*. "When determining whether a defendant is entitled to a jury instruction on a lesser included offense, the trial court is to consider whether there is some evidence in the record that, if believed by the jury, will reduce the crime charged to a lesser offense." *People v. Eubanks,* 2019 IL 123525, ¶ 72.

"When the court determines that there is insufficient evidence to justify the giving of a lesser included offense instruction, the proper standard of review is abuse of discretion." *Id.*

¶ 41    The trial court concluded that no evidence presented at trial demonstrated that a criminal trespass to a vehicle occurred because defendant was present when the car was taken by force, got in the car, and two days later was caught driving the car. However, the State's evidence also demonstrated that defendant entered the vehicle without authority in what defendant described to Freitag as an attempt to prevent the car from being stolen and to later return it to the owner. Defendant told Freitag that the vehicle that was left running and as the man on the phone walked away from the vehicle, he saw a group of people going towards it: so, he jumped in to keep them from taking it. Defendant told Freitag that he drove away but returned to the area in an attempt to find the man who he saw walk away from the vehicle that night. He continued to return to the area until he was stopped by the police. Defendant told Freitag that he did not see an altercation between anyone. Under the defendant's account as to what had happened, no one had stolen the vehicle, therefore, he was not in known possession of a stolen vehicle. This account, if believed by the jury, could also be considered criminal trespass to a vehicle. Thus, we must conclude that defendant was entitled to a jury instruction of the lesser included offense, because there was some evidence that, if believed by the jury, would result in a lesser included offense. *Eubanks,* 2019 IL 123525, ¶ 72.

¶ 42                                 B. Plain Error

¶ 43    Generally, in order to preserve an issue on appeal, defendant must raise an objection at trial and preserve it in a posttrial motion. *People v. Bui*, 381 Ill. App. 3d 397, 405 (2008). Failure to preserve an alleged error for review is a procedural default. *People v. Rivera*, 277 Ill. App. 3d

811, 818 (1996). Defendant acknowledges his remaining claims have not been preserved and seeks to have the remaining issues considered under the plain error doctrine.

¶ 44     Under the plain error doctrine, issues not properly preserved can be considered by a reviewing court. Plain error review is appropriate under either of two circumstances: "(1) where the evidence is so closely balanced, so as to preclude argument that an innocent person was wrongfully convicted; or (2) where the alleged error is so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process." *Bui*, 381 Ill. App. 3d at 406. Prior to invoking the plain error doctrine, it is important to determine if any error actually occurred. *Id.*

¶ 45                                    B. Sentencing

¶ 46     Defendant contends that he should not have been sentenced under the mandatory Class X sentencing statute because section 5-4.5-95(b) (730 ILCS 5/5-4.5-95(b) (West 2018)) of the Unified Code of Corrections (Code) considers whether the qualifying convictions would now be classified as Class 2 or greater felonies. Defendant contends his 1994 offense for aggravated discharge of a firearm, which the trial court here used as a predicate offense, would now be under the exclusive jurisdiction of the juvenile court and would not be classified as a felony conviction due to subsequent amendments made to the statute.

¶ 47     Defendant contends that in 2013, the legislature revised the Juvenile Court Act (Act) to raise the maximum age for juvenile jurisdiction from 16 to 17 for offenses that were not subject to automatic transfer. See Pub. Act 98-61 (eff. Jan 1, 2014) (amending 705 ILCS 405/5-120 (West 2018)). Additionally, under the amendments of 2016, defendants 15 years old and older accused of committing a forcible felony in furtherance of an illegal gang activity and having a prior adjudication or conviction, would presumptively be transferred out of juvenile court. See Pub. Act

99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-805(2)(a) (West 2018)). Defendant maintains he would not have been subject to such a transfer. Even though defendant was charged with aggravated discharge of a firearm and attempted murder, defendant had no priors, and it was a domestic matter, not in furtherance of any gang activity. These conditions, defendant contends make it certain that his previous conviction would not now be classified as a Class 2 felony or greater. Defendant acknowledges this claim was not raised below and seeks this court to review the claim under the plain error doctrine. Defendant contends that whenever an improper sentencing determination is made, it affects substantial rights and falls under the second prong of plain error, making the error egregious.

¶ 48    The State contends that defendant forfeited this claim by not raising it previously, and that no error occurred that would warrant plain error review by this court. They argue that defendant's 1994 conviction for aggravated discharge of a firearm should not be excluded from the trial court's consideration of Class X sentencing because it was a Class 1 felony in 1994 and remains one today, citing 720 ILCS 5/24-1.2(a)(2) (West 1994) and 720 ILCS 5/24-1.2(a)(2) (West 2018). Further, the State contends that the changes made to the Juvenile Act are prospective only and not retroactive. The issue is not whether defendant would now be convicted of the qualifying offense but whether he was previously convicted of a qualifying offense citing *Fitzsimmons v. Norgle*, 104 Ill. 2d 369 (1984) as support. Therefore, the State concludes that this court should reject defendant's argument under the statute's plain language.

¶ 49    The issue of statutory construction is a question of law, which we review *de novo*. *People v. Taylor*, 221 Ill. 2d 157, 162 (2006). The statute in question should be looked at in its entirety, encompassing the subject it addresses and the legislature's objective in enacting it. *Id.* Our inquiry must begin with the language itself; this is the most reliable indicator of the legislature's intent. *Id.*

"When the language of a statute is clear, it must be applied as written without resort to further aids or tools of interpretation." *Id*. We cannot remedy an apparent legislative oversight by rewriting a statute in any way that is inconsistent with the statute's clear and unambiguous language. *Id.* Only when the statute is ambiguous may a court consider other tools to help determine the meaning. *Id*.

¶ 50 The statute at issue here is section 5-4.5-995(b) of the Code which states, in pertinent part, the following:

> "(b) When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, except for an offense listed in subsection (c) of this Section, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony, except for an offense listed in subsection (c) of this Section, and those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender. * * * " 730 ILCS 5/5-4.5-95(b) (West 2018).

¶ 51 This court has consistently held that the language of this statute is "clear and unambiguous," therefore its "focus is on the elements of the prior offense." *People v. Foreman*, 2019 IL App (3d) 160334, ¶ 46. Since the statute is unambiguous, we need not consider the legislative history. *Id*. at ¶ 43. Additionally, we have held that a previous conviction cannot be used as a predicate offense under section 5-4.5-95(b) if it "would have been resolved with delinquency proceedings in juvenile court rather than criminal proceedings." *People v. Miles*, 2020 IL App (1st) 180736, ¶ 11. Therefore, we agree with defendant, had his 1994 conviction of aggravated discharge of a firearm, been committed after the 2016 amendment, it would have been resolved in juvenile court instead of the criminal courts because he was only 17 years old. He

would not have been subject to automatic transfer, and the offenses he was charged with were not offenses where a presumptive transfer would occur. See 705 ILCS 405/5-120 (West 2018) and 705 ILCS 405/5-130(1)(a) (West 2018). The 1994 conviction is not an offense that is an "offense now * * * classified in Illinois as a Class 2 or greater Class felony." 730 ILCS 5/5-4.5-95(b) (West 2018). The State's brief asks this court to reframe the statute by arguing that the question should be "whether he was previously convicted of a qualifying offense." It is clear from the statute that the words "now classified" requires the court to sentence a defendant according to the current classifications at hand. Had the legislature included the term previously, in addition to "now", it would have expanded the scope of classifications that could have been used as predicate offenses for Class X sentencing. However, the limited nature of "now" appears to demonstrate that the legislature intended to only include that classification for sentencing.

¶ 52    The State's reliance on *Fitzsimmons,* is unpersuasive. 104 Ill. 2d 369. This court has previously held that *Fitzsimmons* is not analogous to the case at hand where "the corresponding indication of the legislature's intent, were not present." *People v. Williams*, 2020 IL App (1st) 190414, ¶ 20. In *Fitzsimmons*, the supreme court was interpreting a different sentencing statute and was not facing the statutory language included in section 5-4.5-95(b). Additionally, the court at that time did not have the amendments to the Act as we do now which make it clear that the amendment to the Act "provided some indication that the legislature intended to treat minors who commit certain crimes differently from adults charged with those crimes." *Id.* Therefore, there was nothing for the courts to consider that would have made their predicate offenses subject to juvenile jurisdiction instead of criminal proceedings as we now have.

¶ 53    We acknowledge the concern of our dissenting colleague; however, we disagree with the dissent's findings. The dissent finds that defendant abandoned his intent to return the vehicle

because he had a car in the shop. However, the evidence demonstrated, through Freitag's testimony, that defendant was found near the scene of the crime. This bolstered defendant's statement to Freitag that he kept returning to the scene of the crime in an attempt to return it. He did tell Freitag that having the car was helpful but never indicated that he abandoned his efforts to find the owner. Whether or not this is story is credible is not a part of the analysis. The dissent cites to *McDonald* partially, which states "defendant is entitled to a jury instruction on a lesser-included offense when there is some evidence in the record that, if believed by a jury, will reduce the crime charged to a lesser offense." 2016 IL 118882. ¶ 25. However, *McDonald* also held that, "the appropriate standard for determining whether a defendant is entitled to a jury instruction on a lesser-included offense is whether there is *some evidence* in the record that, if believed by the jury, will reduce the crime charged to a lesser offense; not whether there is some *credible evidence*." *Id*. The testimony provided by Freitag produced some evidence that if believed by a jury could reduce the crime of a lesser-included offense.

¶ 54    Based on the aforementioned findings, we conclude that an error did in fact occur with regard to sentencing. *People v. Bui*, 381 Ill. App. 3d 397, 405 (2008). Additionally, we find that such a sentencing error was so egregious as to deny defendant a fair sentencing hearing, thus satisfying the second prong of plain error. See *People v. Polk*, 2014 IL App (1st) 122017, ¶ 15. An additional term of years added to a defendant's sentence because the wrong sentencing scheme was used is an error so substantial that we must correct it in order to preserve the integrity of the judicial process. *Bui*, 381 Ill. App. 3d at 406.

¶ 55                      C. Closing Arguments

¶ 56    Defendant contends that the State committed reversible error when arguing to the jury that the law prohibited officers from recording defendant's statement to the police and that defendant

did not give the police permission to record him. This statement was a misstatement of fact and law that significantly undermined defendant's attack on Freitag's testimony regarding defendant's statement to him. Defendant's theory was that the failure to record defendant's statement was a form of police misconduct. The State made the misstatements during their rebuttal; defendant's objection was overruled, leaving defendant without an opportunity to correct the misstatements of law and fact. Defendant acknowledges that he did not preserve this objection in a post-trial motion and seeks for this court to review the claim under the plain error doctrine, or in the alternative, ineffective assistance of counsel for failing to preserve and argue the error in post-trial proceedings.

¶ 57    The State contends that defendant forfeited this claim by not including it in a post-trial motion and no error occurred that would warrant plain error review by this court. The State argues that their comments during closing arguments were properly based on the evidence and reasonable inferences therein and were invited by defense counsel arguments. The State was responding to remarks made by defense counsel that defendant's statement was not recorded by Freitag. The State intended to clarify to the jury that Freitag was not required to video record defendant's statement pursuant to 725 ILCS 5/103-2.1(b),(b5) (West 2018), and could not do so without seeking defendant's permission. The State contends that the offense of possession of a stolen vehicle is not one of the enumerated offenses requiring electronic recording of a defendant's custodial statement.

¶ 58    The State provided a substantive argument of the proper standard of review within their footnotes, which this court has previously held is improper. *Technology Solutions Co. v. Northrop Corp.*, 356 Ill. App. 3d 380 (2005). However, the footnotes contained in the State's response are not excessive. Therefore, we decline to disregard them. The State contends that the proper standard

of review is abuse of discretion, which has been determined recently by our supreme court in *People v. Jackson*, 2020 IL 124112, ¶ 83. We agree that *Jackson* is controlling, however, under either standard a reversal is not warranted. *Jackson* held that, "[a] reviewing court will find reversible error only if the defendant demonstrates that the remarks were improper and that they were so prejudicial that real justice was denied, or the verdict resulted from the error." *Id.* ¶ 83.

¶ 59    Prosecutors are given a wide latitude during opening statements and closing arguments. *People v. Nicholas*, 218 Ill. 2d 104, 121 (2006). "In reviewing a challenge to remarks made by the State during closing argument, the comments must be considered in the context of the entire closing statements of the parties." *People v. Williams,* 192 Ill. 2d 548, 573 (2000). Even if the statement "exceeds the bounds of proper argument, the verdict must not be disturbed unless it can be said that the remark caused substantial prejudice to the defendant." *Id.* Additionally, a prosecutor may respond to comments made by defense counsel that invite a response. *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 47. However, a prosecutor may not misstate the facts or argue facts not in evidence. *People v. Cruz*, 2019 IL App (1st) 170886, ¶ 41.

¶ 60    In closing, defense counsel argued that the videotape was missing because of misconduct. In the State's rebuttal closing argument the prosecutor responded to this theory by stating,

> "His statement isn't recorded. The police didn't record his statement because they followed the law. Detective Freitag showed you the crime that he was charged with. That's not a crime that they can video record the Defendant. They can't just take out a camera and start recording him. * * * "

Section 5/103-2.1(b), (b-5), provides when statements may be used as evidence, each respective offense listed requires recording. However, the statement made by the prosecutor indicated that the detectives were prohibited from videotaping because it was not an enumerated offense, making

the action of videotaping defendant unlawful. This is not what that specific statute provides, and the State has not provided any authority that expresses this.

¶ 61    Additionally, the prosecutor stated,

> "[a]nd he didn't give his permission to be recorded. So, no, there isn't a recording of that, because the police followed proper procedures, and they did their job that day. The reason Emmanuel was recorded was because he's not charged with a crime, he's the victim and. guess what?  He consented.  He circled, on the form, I consent to being video recorded.  I consent to being audio recorded. That's why you have that recording of Emmanuel. * * * "

This statement makes it appear that defendant's refusal to consent was the reason the statement was not recorded. Together these comments were misleading.

¶ 62    Although we agree with defendant that these statements were improper, we must determine if they were so prejudicial as to deny real justice or if the verdict resulted in error. *Jackson*, 2020 IL 124112, ¶ 83. The State's misstatements were made amongst a lengthy closing argument but were not the focus of the argument. Instead, the argument was focused on the entirety of the case. The jury was admonished before and after closing arguments that the arguments were not evidence and if something was said that did not match the evidence, they should disregard it. At trial, Freitag testified that he never gave defendant the option of being recorded. Freitag also noted that this was not the type of case where they videotape defendants who are in custody. Therefore, based on the limited argument made, the evidence being available to clarify those statements, and the trial courts consistent admonishments that the statements were not evidence, we find the statements were not so prejudicial that real justice was denied or that the jury's verdict may have resulted from the error. *Id.*

¶ 63    Since we have held that this did not result in prejudice, defendant's alternate claim of ineffective assistance of counsel necessarily fails. *People v. Clendenin*, 238 Ill. 2d at 317-18. Furthermore, we must also reject his request that we review this claim under plain error review because he has failed to show an error existed. *People v. Bui*, 381 Ill. App. 3d 397, 406 (2008).

¶ 64                                                    CONCLUSION

¶ 65    We find that the trial court erred in refusing the jury instruction for criminal trespass to a vehicle where there was some evidence presented, although by the State, that if believed by a jury, could have resulted in a conviction for that lesser included offense. We further find that defendant was improperly sentenced as a Class X offender. Nevertheless, while we agree that the comments made by the prosecutor were improper, they were not so prejudicial to defendant that real justice was denied or that the jury verdict may have resulted in error. For these reasons, we vacate defendant's conviction and sentence of possession of a stolen vehicle and remand for a new trial. If the new trial results in conviction, the court shall not consider the 1994 aggravated discharge of a firearm conviction for Class X sentencing.

¶ 66    Vacated and remanded.

¶ 67    JUSTICE HARRIS, dissenting:

¶ 68    I agree with the majority that defendant was improperly sentenced as a Class X offender, and with the finding that the prosecutor's improper comments were not so prejudicial to defendant that the jury verdict may have resulted in error. However, I disagree with the determination that the court erred in refusing to instruct the jury on the lesser-included offense of criminal trespass.

¶ 69    There is no authority that intent to permanently deprive is an element of the offense of possession of a stolen motor vehicle. *People v. Washington*, 184 Ill. App. 3d 703, 708 (1989). However, the intent to permanently deprive element may come into play where the defendant was

the alleged thief who stole the car. See *People v. Cozart*, 235 Ill. App. 3d 1076, 1081 (1992); see also *People v. Pollards*, 367 Ill. App. 3d 17, 23 (2006) (finding that where a conviction for possession is predicated on possession by the same person who committed the theft, and his intent was not clearly established by the evidence, jury instructions that define theft as having the intent to permanently deprive may be required). If it was the defendant who stole the vehicle, he could be convicted of possession by showing he possessed the vehicle because "defendant would have to know he had stolen or converted" the vehicle. *People v. Cramer*, 85 Ill. 2d 92, 100 (1981). It follows that if the defendant could show his mental state was inconsistent with that required for theft, he could not be convicted of possession of a stolen motor vehicle. *Washington*, 184 Ill. App. 3d at 708.

¶ 70 Defendant contends that the State's theory at trial was that he stole the Udoh's Nissan. He argues that his mental state was inconsistent with that required for theft because he took the vehicle only to keep others from stealing it and intended to return the vehicle to the owner. However, whether defendant intended to steal the Nissan when he took the car became a non-issue once he kept the vehicle without authorization and without manifesting an intent to return it. "[T]he intent to deprive an owner of his property may be inferred simply from the act of taking another's property. Likewise, it may be inferred from the lack of evidence of intent to return the property or to leave it in a place where the owner could safely recover it." *People v. Adams*, 161 Ill. 2d 333, 343–44 (1994).

¶ 71 Although defendant said that he only took the Udoh's vehicle to keep others from stealing it, and he intended to return the vehicle, the evidence showed otherwise. Defendant was found driving the vehicle more than a day after the incident. He admitted that he could have taken the vehicle to the police, but he did not. He could have also taken other measures, such as leaving the

car at the place where he last saw Udoh or searching for information in the car that would identify the owner. He did not do so. Rather, defendant explained that he kept the Udohs' vehicle because his car was in the shop. Defendant, however, did not have their permission to use the vehicle. The evidence at trial thus showed an intent to deprive the Udohs of their property and contradicted defendant's claim that he intended to return the property to its rightful owner.

¶ 72    When there is a request for an instruction on a lesser-included offense, the court must examine the evidence adduced at trial to determine whether it rationally supports a conviction for the lesser-included offense. *People v. Phillips*, 383 Ill. App. 3d 521, 540 (2008). Defendant is entitled to a jury instruction on a lesser-included offense when there is some evidence in the record that, if believed by a jury, will reduce the crime charged to a lesser offense. *People v. McDonald*, 2016 IL 118882. ¶ 25. Given the lack of evidence establishing defendant's intent to return the vehicle or leave it in a place where the Udohs could safely recover it, the trial court did not abuse its discretion in refusing to give a jury instruction on criminal trespass. See *Id*. ¶ 57. Therefore, I respectfully dissent.